J-A18006-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHAYNE CHARLES COFFIELD | : | |
| | : | |
| Appellant | : | No. 577 WDA 2015 |

Appeal from the Judgment of Sentence February 24, 2015
In the Court of Common Pleas of Washington County Criminal Division at
No(s):  CP-63-CR-0001372-2013

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHAYNE CHARLES COFFIELD | : | |
| | : | |
| Appellant | : | No. 1844 WDA 2015 |

Appeal from the Judgment of Sentence May 26, 2015
In the Court of Common Pleas of Washington County Criminal Division at
No(s):  CP-63-CR-0001372-2013

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHAYNE CHARLES COFFIELD | : | |
| | : | |
| Appellant | : | No. 1266 WDA 2016 |

Appeal from the Order August 18, 2016
In the Court of Common Pleas of Washington County Criminal Division at
No(s):  CP-63-CR-0001372-2013

BEFORE:  BOWES, J., LAZARUS, J., and OTT, J.

MEMORANDUM BY BOWES, J.:                    **FILED JANUARY 2, 2018**

Shayne Charles Coffield appeals from the judgment of sentence of ten to twenty years incarceration imposed following his conviction for, *inter alia*, robbery.  We affirm the convictions, but vacate judgment of sentence and remand for further proceedings.

The trial court aptly summarized the facts established by the Commonwealth in its Pa.R.A.P. 1925 opinion:

> On January 21, 2013, two people, dressed in black, with masks covering their faces entered the Isaly's store in Washington, Pennsylvania. Noreen Pago (hereinafter "Pago") and Robin Wright (hereinafter "Wright"), then clerks at the store, testified that the first actor, a white male with blue-green eyes, jumped onto and over the store counter wielding a knife, demanded money, and asked about the store's safe.  The second actor, wielding a softball bat, remained on the other side of the counter.  The actor with the knife then took money from the store's lottery drawer and placed it on the counter.  The second actor then shoved the money into his pants, and the two actors fled.  The clerks testified that the actors took $730.00 in cash from the drawer.
>
> Later, on April 8, 2013, Casey Ivery (hereinafter "Ivery") contacted police and claimed to have information relating to the January 21, 2013 Isaly's robbery.  Trooper Thomas Kress of the Pennsylvania State Police conducted a tape recorded interview with Ivery that same day, wherein Ivery stated that on January 21, she was living with Michael Steinstraw, and that day, upon entering her apartment, she saw Defendant and Steinstraw dressing in black clothing and gloves, searching for garments with which to cover their faces, and arming themselves - one with a black and pink Easton softball bat and one with a steak knife.  Ivery then told police that she heard Defendant and Steinstraw stating their intention to rob Isaly's.

- 2 -

Ivery then left the apartment to pick up her daughter, and upon her return, she could see flashing red and blue lights in the direction of Isaly's. Defendant and Steinstraw were inside the apartment wearing their undergarments, with a stack of money nearby. Ivery informed police that Defendant then claimed that he and Steinstraw had just robbed Isaly's. Specifically, Ivery stated that Defendant told her he had jumped on the counter at the store, demanded money from the store clerk at knifepoint, then removed money from a drawer inside the store and handed it to Steinstraw. Ivery then told police that, at some time following the robbery, she, Defendant and Steinstraw placed the softball bat in the trunk of her car, drove to a location near her apartment, and ditched it in a wooded area along the road. At trial, however, Ivery claimed to have no memory of the night of the incident, or of the substance of the conversation she had with Trooper Kress on April 8, 2013, citing her drug abuse as the cause of her memory's failings.

Trial Court Opinion, 8/2/16, at 4-6.

A jury convicted Appellant of the robbery and theft by unlawful taking. On February 17, 2015, the trial court imposed a sentence of ten to twenty years incarceration, structured as follows: eight and one-half to seventeen years for robbery, plus a consecutive period of one and one-half to three years incarceration for theft by unlawful taking.[1] Three separate notices of appeals followed.

First, on February 24, 2015, Appellant filed timely post-sentence motions. The court held a hearing, which culminated with the judge

_____

[1] In this order, the court also imposed sentence for probation violations. Appellant filed a separate notice of appeal from that sentence, listed consecutively to this appeal. Those sentences were later modified pursuant to a *nunc pro tunc* restoration of post-sentencing appellate rights.

ordering the parties to address whether the charges merged. The Commonwealth then filed its own motion on March 13, 2015, seeking modification of Appellant's sentence, which we construe as a memorandum of law in response to Appellant's motion.[2] On March 23, 2015, the trial court issued a sentencing order purporting to grant the Commonwealth's motion for modification, which we elect to treat as an order granting, in part, Appellant's post-sentence motion for reconsideration of sentence. In that order, the court determined that theft merged with robbery, and therefore vacated both sentences. The court then imposed the exact same sentence of ten to twenty years at the robbery charge. Thereafter, it issued a separate order, docketed March 23, 2015, disposing of Appellant's remaining post-sentence motion claims. Appellant filed a notice of appeal from that order, docketed at 577 WDA 2015. This docket is the appeal we dispose of on the merits, as explained *infra*.

On April 22, 2015, the trial court ordered Appellant to file a concise statement of matters complained of on appeal. While that order was outstanding, the trial court issued, on May 28, 2015, an amended order of sentence which did not alter the instant sentence. The purpose of this order was to impose a sentence for probation revocations that occurred due to the

_____

[2] The Commonwealth's motion for modification, if actually treated as such, was untimely. See Pa.R.Crim.P. 721(B)(1) (Commonwealth modification for sentence must be filed within ten days of sentence).

instant conviction. In an abundance of caution, Appellant filed the same post-sentence motions that were filed on February 24, 2015, which were denied by operation of law. Again seeking to preserve his appellate rights, Appellant filed a second notice of appeal, docketed at 1844 WDA 2015. On November 20, 2015, Appellant filed his Rule 1925(b) statement. The trial court authored its Rule 1925(a) Opinion in response.

The third and final notice of appeal is due to the fact that the trial court, in addressing Appellant's issues, realized that it had made a sentencing error. As explained in its Rule 1925 opinion:

> Upon further review of the case file, the trial court determined that the Pre-Sentence Investigation report contained inaccuracies relating to the guideline ranges of sentence, and thus is issuing an order contemporaneously with this opinion, reducing Defendant's sentence to a term of eight and one-half (8 1/2) to twenty (20) years of incarceration on the Robbery count.

Trial Court Opinion, 8/2/16, at 14. As indicated, the trial court simultaneously issued a separate sentencing order purporting to amend Appellant's sentence. Appellant again filed post-sentence motions, which were denied, and a subsequent notice of appeal, docketed at 1266 WDA 2016.

This Court consolidated all three appeals. Consequently, we have three separate sentences before us: first, the March 23, 2015 sentence, which granted Appellant's original post-sentence motion for reconsideration; second, the May 28, 2015 order, which purported to modify the March 23, 2015 order, but simply reimposed that sentence along with probation

revocation sentences; and, finally, the August 2, 2016 order, which attempted to reduce Appellant's sentence from ten to twenty years incarceration to eight and one-half to seventeen years of incarceration.

The only sentence validly imposed was the sentence of March 23, 2015, which was a result of the order granting reconsideration. The other two orders were nullities, and must be vacated. While we commend the trial court's desire to correct a sentencing error, it lacked jurisdiction to modify its sentence after it granted Appellant's post-sentence motion for reconsideration.[3] By law, a court "may modify or rescind any order within 30 days after its entry . . . if no appeal from such order has been taken or allowed." 42 Pa.C.S. § 5505. Our Supreme Court has held that § 5505 does not prevent a trial court from "correct[ing] a patent defect or mistake in the record" even after a notice of appeal has been filed. *Commonwealth v. Klein*, 781 A.2d 1133, 1135 (Pa. 2001) (citing *Commonwealth v. Cole*, 263 A.2d 339, 341 (Pa. 1970)). The trial court's third sentencing order reduced Appellant's sentence and therefore cannot be characterized as correcting a patent defect or mistake.

We likewise vacate the March 23, 2015 order. Appellant pursued his legality of sentence claim, the trial court conceded that the sentence was

---

[3] We further recognize the confusion caused by the fact the trial court's March 23, 2015 order facially stated that it was granting the Commonwealth's motion. Appellant wisely protected his appellate rights at all stages.

improper, and both parties assume that the order of August 2, 2016 reducing Appellant's sentence was lawfully imposed. *See* Appellant's brief at 13; Commonwealth's brief at 7, n.1 (The initial sentence . . . was modified twice, the last time on August 2, 2016. It is from this final sentence that this appeal properly lies."). The sentencing defect identified by the trial court can be remedied upon remand.

We now proceed to examine the merits of Appellant's two claims, which are presented as follows:

> I. Whether the trial court erred in denying [Appellant]'s Rule 600 motion where the Commonwealth chose to let [Appellant]'s trial deadline of October 5, 2014 pass in order to try [Appellant] on a different—and more recently filed—case?
>
> II. Whether the trial court abused its discretion in admitting an audiotaped statement as an exception to the hearsay rule where the Commonwealth did not satisfy the requirements for the past recollection recorded exception to the same, the trial court's decision to admit the audiotaped statement was made on the basis of a past recollection recorded analysis, and—in any event—the audiotaped statement does not constitute a prior inconsistent statement?

Appellant's brief at 8.

Appellant's first issue concerns an alleged failure of the Commonwealth to timely prosecute his case pursuant to Pennsylvania Rule of Criminal Procedure 600. Our standard and scope of review in evaluating Rule 600 issues is well-settled. We determine

> whether the trial court abused its discretion. Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration. An abuse of discretion is not merely an error of

judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.

The proper scope of review is limited to the evidence on the record of the Rule [600] evidentiary hearing, and the findings of the [trial] court. An appellate court must view the facts in the light most favorable to the prevailing party.

*Commonwealth v. Armstrong*, 74 A.3d 228, 234 (Pa.Super. 2013) (citing *Commonwealth v. Ramos*, 936 A.2d 1097, 1099 (Pa.Super. 2007) (*en banc*) (alterations in original due to rule renumbering)). "The proper application of discretion requires adherence to the law, and we exercise plenary review of legal questions." *Commonwealth v. Baird*, 975 A.2d 1113, 1118 (Pa. 2009) (citing *Commonwealth v. Chamberlain*, 731 A.2d 593, 595 (Pa. 1999)). Where the Commonwealth's due diligence is at issue, we apply the following principle:

As has been oft stated, "[d]ue diligence is fact-specific, to be determined case-by-case; it does not require perfect vigilance and punctilious care, but merely a showing the Commonwealth has put forth a reasonable effort."

*Commonwealth v. Bradford*, 46 A.3d 693, 701–02 (Pa. 2012) (quoting *Commonwealth v. Selenski*, 994 A.2d 1083, 1089 (Pa. 2010)).

To adequately dispose of the Rule 600 issue, we must discuss Appellant's other criminal cases. The instant offense, committed January 21, 2013, occurred twenty-nine hours after Appellant was released from serving a period of incarceration. As indicated by the factual recitation

supplied by the trial court, Appellant was not apprehended for some time, with the authorities initiating charges on April 9, 2013. Appellant's post-release crime spree included robberies on March 9, 2013, and March 27, 2013. The charges for these cases were respectively filed at criminal case numbers 2013-1371 and 2013-1373, with corresponding complaint dates of May 30, 2013, and April 10, 2013. Additionally, Appellant faced charges at criminal cases 2013-2006 and 2013-2247, with incident dates of, respectively, July 29, 2013, and July 8, 2013. All five cases were listed for trial together.

On January 7, 2014, Appellant filed a motion for continuance, docketed at all five cases, and the trial court later held a status conference. The docket sheets for cases 2013-1371, 2013-1372, 2013-1373 all contain this notation, dated March 12, 2014: "[Appellant] to appear or be brought before undersigned on March 24, 2014 at 9 for trial." It is unclear what occurred on that date; however, Appellant appeared for a jury trial on June 9, 2014 at case 2013-1373, and was acquitted of all charges.

At the Rule 600 hearing on this matter, the Commonwealth indicated that it intended to proceed on the 2013-1371 case, which was filed on May 30, 2013, in July. However, Appellant's counsel was completely unavailable for trial that month due to, *inter alia*, a required continuing legal education course, other hearings, and a scheduled vacation, resulting in a September

trial date.[4]  Accordingly, the Commonwealth scheduled case 2013-1371 for the September trial term.  That decision forms the basis for Appellant's current claim.[5]

Appellant filed his motion to dismiss on October 8, 2014.  Rule 600 requires the Commonwealth to try a defendant within one year of filing the complaint; thus, our starting point is the mechanical run date, which is calculated by simply adding 365 days to the complaint date.[6] **_Commonwealth v. Goldman_**, 70 A.3d 874, 879 (Pa.Super. 2013).  In this case, the criminal complaint was filed on April 9, 2013, making the mechanical run date April 9, 2014.

We then add periods of excludable time for delays caused by the defendant or his counsel, resulting in an adjusted run date.  If the trial takes place after that date, we ask whether there was any excusable time attributable to circumstances beyond the Commonwealth's control.  If the Commonwealth acted with due diligence, those periods of time are added to

---

[4] Appellant does not dispute the trial court's statement that Washington County did not have an August trial term.

[5] The trial did not take place as scheduled, due to a discovery issue.  At the Rule 600 hearing, the Commonwealth indicated that it "had to dismiss the jury because of the discovery."  N.T. Rule 600 hearing, 10/16/14, at 14.

[6] Rule 600 was rescinded and readopted on July 1, 2013.  This prosecution was initiated April 9, 2013 and we therefore apply the former version of Rule 600.  **_Commonwealth v. Colon_**, 87 A.3d 352, 357, n.3 (Pa.Super. 2014).  The changes are not substantive.

the adjusted run date, yielding a final Rule 600 run date. ***Ramos***, ***supra*** at 1102 ("If, however, the defendant's trial takes place outside of the adjusted run date, we must determine . . . whether the delay occurred despite the Commonwealth's due diligence.").

Since the calculation of the adjusted run date is of paramount importance, we begin by noting that Appellant accepts the Commonwealth's calculations contained in its written response to Appellant's motion to dismiss. "Here, the parties agreed that delay attributed to [Appellant] and his counsel, rather than the Commonwealth, resulted in an October 5, 2014, deadline to bring [Appellant] to trial." Appellant's brief at 20. Appellant's trial commenced on October 20, 2014. The Commonwealth asserted, and the trial court accepted, that the judicial delay doctrine excused the fifteen-day overage. Our Supreme Court has explained that doctrine as follows:

> Judicial delay can support the grant of an extension of the Rule [600] run date. This Court stated in [***Commonwealth v. Crowley***, 502 Pa. 393, 466 A.2d 1009 (1983)] that where the delay is due to congested court dockets, the trial court is to establish that:
>
> > it has devoted a reasonable amount of its resources to the criminal docket and that it scheduled the criminal trial at the earliest possible date consistent with the court's business. While the trial court may be required to rearrange its docket, if possible, when judicial delay has caused a lengthy postponement beyond the period prescribed by Rule 1100, or one that implicates the constitutional right to a speedy trial, it should not be required to do so to avoid a delay of under 30 days.

*Commonwealth v. Spence*, 627 A.2d 1176, 1181 (Pa. 1993). The Commonwealth's basis for applying this principle is that the courtroom was unavailable to try Appellant in September, and the Commonwealth proceeded at the next available trial date, which was within thirty days of the adjusted run date.

Appellant argues that this doctrine does not apply, as the instant charges arose first in time among the remaining cases that were scheduled for trial. "Despite the instant matter being the oldest of those cases pending against [Appellant] in 2014, the Commonwealth chose not to call it to trial prior to October 5, 2014, and instead elected to try [Appellant] on another, more-recently filed case." Appellant's brief at 22. This argument implicates the Commonwealth's due diligence obligations, *i.e.*, Appellant claims that the Commonwealth was required to prioritize the prosecution of the older case. In support, he cites *Commonwealth v. Lewis*, 804 A.2d 671, 674 (Pa.Super. 2002), for the principle that "Once a case has possible Rule 600 problems, prosecutors are required to do everything that is reasonable in their power to try the case in time."

Presently, Appellant maintains that "everything that is reasonable" encompasses the duty to prioritize cases with looming Rule 600 issues to the exclusion of others, at least when the cases involve the same defendant. We disagree, and find that the Commonwealth's due diligence was not at issue due to Appellant's unavailability in September. We therefore affirm on

- 12 -

this basis, as it is fully supported by the record. *See Commonwealth v. O'Drain*, 829 A.2d 316, 322, n.7 (Pa.Super. 2003) (this Court may affirm if there is any basis on the record to support the trial court's action).

In *Lewis*, we affirmed the grant of a Rule 600 motion to dismiss. The prosecutor selected January 8, 2001, as the trial date, and agreed that January 22, 2001, was the adjusted run date. However, the prosecution encountered a problem extraditing a key witness, and failed to inform the court of that fact until jury selection. *Id*. at 672. The court continued jury selection until January 16, but the same assistant district attorney "chose to commence another high-profile case on that date, further causing delay of the within case[.]" *Id*. at 673. The court then postponed jury selection to January 26. Lewis filed a motion to dismiss, which the trial court granted. *Id*. We affirmed, opining that the prosecutor

> was or should have been well aware that there were Rule 600
> issues when he asked that the trial not start on January 16
> because he preferred the lure of another high-profile case. As
> the trial court found, "Other than the high-profile nature of the
> other case, the prosecutor's decision is inexplicable." Trial Court
> Opinion at 6. The Commonwealth has not offered any evidence,
> nor do we find any in the record, to indicate that more urgent
> Rule 600 cases compelled it to postpone Appellee's case beyond
> the adjusted run-date. Rather, it appears the Commonwealth
> simply preferred to try its high-profile case first, at the expense
> of Appellee's statutory right to prompt trial. As a result, we find
> that the Commonwealth was not duly diligent in trying to begin
> the case before the 365 days had expired.

*Id*. at 674.

Appellant maintains that *Lewis* requires the same outcome herein, as in both cases the prosecutor elected to try one case to the exclusion of another. We find that *Lewis* is distinguishable. First, the prosecutor therein failed to exercise due diligence in securing a witness for the original trial date, thus preventing a timely trial. "[The Commonwealth] should have timely notified the trial court that there were troubles in securing the witness as soon as the problem arose." *Id*. at 674. Then, when the witness in *Lewis* became available for trial, the prosecutor chose to try another case, which did not present a more urgent Rule 600 concern, instead of proceeding against Lewis. Hence, *Lewis* involved a prosecutor electing to proceed against a completely different defendant, instead of trying the case that had already exceeded its adjusted run date.

In contrast, the prosecution of the criminal charges at 2013-1371 and 2013-1372 both involved Appellant as defendant. Significantly, the Commonwealth intended to try case 2013-1371 in July, but defense counsel was unavailable. Obviously, that period of delay is already accounted for in the excludable time calculation. However, Appellant fails to acknowledge that the delay of that case created a cascading compound delay of all other cases, including the instant matter. Unless the Commonwealth was required to list all cases for trial simultaneously, and therefore force Appellant to prepare for multiple cases at the same time, a delay in one case is in truth a delay of all cases. We reject the notion that Rule 600 obligated the

Commonwealth and the trial court to rearrange the trial calendar to accommodate a delay caused by Appellant.

In our view, Appellant's act of postponing the July case rendered him unavailable for trial in September with respect to **this** case. *C.f. Commonwealth v. Plowden*, 157 A.3d 933, 941 (Pa.Super. 2017) (*en banc*) ("A criminal defendant who is incarcerated in another jurisdiction is unavailable within the meaning of Rule 600[.]"). The Commonwealth and trial court were not required to rework schedules and trial calendars when the case would have proceeded in July but for Appellant's delay. Therefore, since the Commonwealth prosecuted Appellant in September, he was unavailable for trial in the instant matter, resulting in excludable time. *See Commonwealth v. Anderson*, 959 A.2d 1248, 1251 (Pa.Super. 2008) ("[U]navailability [of] the defendant, at any stage of the proceedings, is mandated as excludable."). Since trial against Appellant commenced at the next available court date, Appellant's Rule 600 rights were not violated.[7]

We acknowledge Appellant's argument that his constructive unavailability is irrelevant, in that the Commonwealth could have abandoned its preferred order of prosecution in light of defense counsel's unavailability

_____

[7] We need not calculate the precise number of days to be added to the adjusted run date as a result of this unavailability, as the Commonwealth commenced trial at the next available term.

in July.[8]  We disagree.  Assuming *arguendo* that the Commonwealth's due diligence obligations may require an adjustment of order in some situations, our precedents do not require the Commonwealth to take every conceivable measure.  ***See Commonwealth v. McNear***, 852 A.2d 401, 407 (Pa.Super. 2004) ("[D]ue diligence must be judged by what **was** done by the authorities rather than by what was not done.") (citation omitted; emphasis supplied by original).  Furthermore, this case does not present the type of extreme delay triggering the duty to seek alternative arrangements.  "However, the Commonwealth may, under some circumstances (*e.g.* a prolonged judicial absence), have a duty to seek other courtrooms to try the case."  ***Commonwealth v. Riley***, 19 A.3d 1146, 1149 (Pa.Super. 2011); ***Compare Commonwealth v. Trippett***, 932 A.2d 188, 198 (Pa.Super. 2007) (case delayed by over six months due to unavailable courtroom;

---

[8] The line between judicial delay and delay caused by the Commonwealth's own actions is sometimes difficult to draw.  ***See Commonwealth v. Mills***, 162 A.3d 323, 325 (Pa. 2017) (while normal progression of criminal case does not automatically constitute delay, trial courts have discretion "to differentiate between time necessary to ordinary trial preparation and judicial delay arising out of the court's own scheduling concerns").  In ***Mills***, Justice Wecht, joined by Justices Todd and Donohue, filed a concurring opinion expressing the view that judicial delay is relevant only after the Commonwealth establishes it acted with due diligence.  ***Id***. at 325-27.

"Commonwealth attempted to have the case reassigned to another judge but none were available").[9] No relief is due on Appellant's Rule 600 claim.

We now address Appellant's second issue, which concerns the introduction of an out-of-court statement given by Casey Ivery, who inculpated Appellant in a recorded statement supplied to Trooper Kress. At trial, Ivery rebuffed the Commonwealth's attempt to elicit the details she previously disclosed to the authorities. Ivery first claimed that she was aware of the robbery but did not remember it. N.T., 10/20-22/14, at 95. When asked the generic question, "Do you have any information relating to the robbery[?]", she replied, "Not that I can remember." *Id*. at 96. Ivery then conceded that she spoke to a police officer, but stated that she could not remember what she said. *Id*. at 97. Ivery attributed her lack of memory to the fact she "was on a lot of drugs back then[.]" *Id*. at 98. The following exchange embodies her recalcitrance:

> Q. The information that you told [the officer] then, was that information that you had?
>
> A. Like I said, I don't remember what our conversation was about. I don't remember. I just don't remember. I mean, like I was using then when I spoke to him. I was high then too. I just don't remember.

---

[9] ***Trippett*** does not specifically discuss what efforts the Commonwealth made to have another courtroom hear the case.

*Id*. at 98-99. The witness was then shown a transcript of her statement in an attempt to refresh her recollection, and she stated that it did not assist her memory.

At that juncture, the Commonwealth sought to introduce the actual recorded statement pursuant to the pertinent hearsay exception codified at Pa.R.E. 803.1(3), which states:

> **(3) Recorded Recollection of Declarant-Witness.** A memorandum or record made or adopted by a declarant-witness that:
>
> (A) is on a matter the declarant-witness once knew about but now cannot recall well enough to testify fully and accurately;
>
> (B) was made or adopted by the declarant-witness when the matter was fresh in his or her memory; and
>
> (C) the declarant-witness testifies accurately reflects his or her knowledge at the time when made.
>
> If admitted, the memorandum or record may be read into evidence and received as an exhibit, but may be shown to the jury only in exceptional circumstances or when offered by an adverse party.

Pa.R.E. 803.1(3).

Appellant lodged an objection. The trial court then conducted a hearing outside the presence of the jury, and concluded that this exception applied. However, in its Rule 1925(a) opinion, the trial court justified inclusion of the evidence under Pa.R.E. 803.1(1), which governs the introduction of prior inconsistent statements. That exception reads:

- 18 -

**(1) Prior Inconsistent Statement of Declarant-Witness.** A prior statement by a declarant-witness that is inconsistent with the declarant-witness's testimony and:

(A) was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition;

(B) is a writing signed and adopted by the declarant; or

(C) is a verbatim contemporaneous electronic recording of an oral statement.

Pa.R.E. 803.1(1). Further complicating matters, we note that Rule 803.1 was modified on April 1, 2017 to, *inter alia*, add the following subdivision, which directly deals with the admissibility of the statement at issue:

**(4) Prior Statement by a Declarant-Witness Who Claims an Inability to Remember the Subject Matter of the Statement.** A prior statement by a declarant-witness who testifies to an inability to remember the subject matter of the statement, unless the court finds the claimed inability to remember to be credible, and the statement:

(A) was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition;

(B) is a writing signed and adopted by the declarant; or

(C) is a verbatim contemporaneous electronic recording of an oral statement.

Pa.R.E. 803.1(4).

While this rule of evidence did not exist at the time of trial, we think its inclusion is significant in that it clearly sanctions the admission of this type of evidence. The three quoted exceptions largely differ with respect to their details. For example, as Appellant points out, Rule 803.1(1) does not strictly apply herein since Ivery's audiotaped statement was not "inconsistent" with

any of her testimony. Rather, the witness declined to offer any testimony, consistent or inconsistent, with her previous statement by claiming a total loss of memory. Indeed, Ivery steadfastly refused to admit anything about the prior statement beyond the bare fact that she gave it.[10] This same point applies to Rule 803.1(3), which requires, *inter alia*, that the statement was made "when the matter was fresh in his or her memory[.]" As Appellant points out, Ivery disclaimed remembering the details of her prior statement as a result of her drug use. Thus, the witness neither affirmed nor denied that the prior statement was made when the matter was fresh in her memory, nor did she testify that the recorded statement accurately reflected her knowledge at the time it was made. **See** Pa.R.E. 803.1(3)(C).

Appellant's challenges to the admission of the evidence are thus well-stated in that Ivery did not supply testimony that was inconsistent with the recorded statement. Nevertheless, we decline to find that the court abused its discretion in admitting the statement. We reiterate that Rule 803.1(4)

---

[10] Even to that limited point, Ivery was uncooperative. First, she disavowed any memory of giving a recording. N.T., 10/20-22/14, at 106. Then, when asked if hearing the tape would help refresh her recollection, she stated, "I guess. I don't know what I sound like on a tape." **Id**. at 110. When the recorded statement was played outside the presence of the jury, the court asked, "Is that your voice, Ma'am?", she replied, "I guess you can say it was. I don't know." **Id**. at 110. Ultimately, she admitted the voice was hers, but claimed that her voice "sounds different. It sounds like I wasn't sober." **Id**. at 111. Thus, the fact that her statement did not technically conflict with any testimony is directly attributable to her unwillingness to concede that she gave a statement.

now directly deals with this exact problem by permitting the trial court to determine whether the claimed inability to remember is credible. The Comment thereto states:

> The purpose of this hearsay exception is to protect against the "turncoat witness" who once provided a statement, but now seeks to deprive the use of this evidence at trial. It is intended to permit the admission of a prior statement given under demonstrably reliable and trustworthy circumstances, **see**, **e.g.**, **Commonwealth v. Hanible**, 30 A.3d 426, 445 n. 15 (Pa. 2011), when the declarant-witness feigns memory loss about the subject matter of the statement.

Pa.R.E. 803.1(4).[11]

**Hanible**, cited by the Comment, is instructive of the applicable principles. The appellant therein challenged his trial counsel's failure to object to the introduction of a prior statement by Mr. Wiley, a key witness to the events. At trial, Wiley

> repudiated the statement he previously gave police, and testified that he never had a conversation with Appellant about a potential robbery of the victims, did not observe Appellant standing over Wise with a gun, and knew nothing about the murders. Wiley explained that police forced him to make and sign the false statement by physically attacking him and threatening to charge him with the murders. The Commonwealth then effectively impeached its own witness by confronting Wiley with the relevant portions of the statement he gave to police. To bolster the veracity of Wiley's prior statement, the Commonwealth also presented the testimony of the officer who

---

[11] Rule of Evidence 804, establishing when a witness may be considered unavailable, was amended to include the following criterion: "A declarant is considered to be unavailable as a witness if the declarant . . . testifies to not remembering the subject matter, except as provided in Rule 803.1(4)[.]" Pa.R.E. 804(a)(3).

> took Wiley's statement, Detective Patrick Mangold. Detective Mangold testified that he did not use physical force or threat to obtain information from Wiley, and did not suggest answers to the questions posed, but rather asked Wiley questions and wrote down his responses verbatim.

*Id*. at 436. During collateral proceedings, Hanible alleged that counsel ineffectively failed to object to the introduction of the prior statements. Specifically, he claimed that pursuant to Rule 803.1(1), Wiley did not adopt the statement. The Court disagreed, holding that there was no arguable merit to the objection as "Wiley adopted his prior statement to police when he signed each page of the document." *Id*. at 447.

Applying *Hanible*, we agree that the prior statement was admissible. Ivery clearly adopted the statement by agreeing to its recording. Moreover, she eventually admitted that she actually gave that statement. While her trial testimony differs from that of the witness in *Hanible* insofar as she did not technically offer any testimony inconsistent with the prior statement, whereas Wiley agreed that he made the statement (albeit under duress), that is simply a function of the fact she disclaimed any memory of the robbery. We do not find that this distinction warrants a contrary outcome. Indeed, in *Hanible*, Wiley's inconsistent trial testimony did not deny the substance of what he previously stated. The same is true here. Ivery did not deny that she made the statements; she simply attributed the contents of her statement to her alleged intoxication. In this sense, the instant

statement was clearly more reliable than the written adoption in **Hanible**.[12]

**Compare Commonwealth v. Lively**, 610 A.2d 7, 11 (Pa. 1992) (error to permit police officer to testify to prior statement by witness which was not reduced to writing, recorded, or adopted by the witness). Hence, we hold that the instant statement was admissible pursuant to Rule 803.1(1) and affirm the ruling on that basis.[13]

Finally, to the extent that there is a substantive difference between this case and **Hanible**, the amendment to Rule 803.1 squarely addresses this problem by expressly permitting the trial court to make a credibility

---

[12] Appellant, of course, remained free to challenge the reliability of the prior statement by arguing that Ivery's attestation to her intoxication undercut what she told the police.

[13] Appellant argues that this Court is bound to examine only the legal reasoning employed by the trial court at the time of its ruling, and we therefore must ignore the trial court's Rule 1925(a) Opinion, which justified admission of the evidence under a different hearsay exception. Thus, Appellant suggests that this Court cannot examine whether the trial court actually erred in admitting the evidence as a question of law, only whether the trial court abused its discretion at the moment it admitted the evidence under a mistaken understanding of the law. We disagree. **See generally Commonwealth v. Fant**, 146 A.3d 1254, 1265, n.13 (Pa. 2016) ("According to the 'right-for-any-reason' doctrine, appellate courts are not limited by the specific grounds raised by the parties or invoked by the court under review, but may affirm for any valid reason appearing as of record.").

Moreover, Appellant's suggestion to the contrary means that a trial judge who sustains or overrules an objection can later more fully explain its reasoning upon reflection, while the trial judge who explains their reasoning is "locked in" to the explanation given at trial. We view the ultimate question as whether the evidence was admissible, not whether the trial court's theory of admissibility was correct.

finding regarding the purported memory loss. The trial court could not, of course, invoke that Rule since it did not exist during trial. Nevertheless, its inclusion makes plain that any distinction between the prior statement introduced in **Hanible** and the prior statement herein is not tenable.[14] We therefore find that the trial court did not abuse its discretion.

Conviction affirmed. Judgment of sentence vacated and remanded for resentencing consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/2/2018

---

[14] In the alternative, we express our view that the failures to establish that the prior statements were inconsistent with Ivery's trial testimony do not warrant a new trial as a variation of harmless error. While that concept addresses the effect of evidence that should not have been introduced in the first place, the inclusion of Rule 803.1(4) makes plain that her statement would be admissible in any retrial if she continued to assert a drug-abuse induced memory loss that was conveniently limited to the contents of her recorded statement. Appellant is not entitled to a windfall in the form of a new trial.